IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CHRISTOPHER SALEM,                    )       CIVIL 15-00384 LEK-KSC
                                      )
          Plaintiff,                  )
                                      )
     vs.                              )
                                      )
ALAN ARAKAWA, individually            )
and in his official capacity          )
as MAYOR OF THE COUNTY OF             )
MAUI; et al.,                         )
                                      )
          Defendants.                 )
_____        )


**ORDER: (1) GRANTING IN PART AND DENYING IN PART
INDIVIDUAL DEFENDANTS' MOTION FOR PARTIAL DISMISSAL
OF CLAIMS IN PLAINTIFF'S COMPLAINT, FILED ON
SEPTEMBER 18, 2015, AND FOR A MORE DEFINITE
STATEMENT AS TO CERTAIN CLAIMS; AND (2) DENYING
AS MOOT PLAINTIFF'S MOTION TO DISMISS DEFENDANTS'
AMENDED COUNTERCLAIM FILED NOVEMBER 12TH, 2015
<u>PURSUANT TO FRCP RULE 12(B)(1), (3), (6)</u>**

     The instant case was removed to this Court on

September 28, 2015, after originally being filed in the Circuit

Court of the Second Circuit, State of Hawai`i.  <u>See</u> Notice of

Removal, filed 9/28/15 (dkt. no. 1), Exh. A, Parts 1-3

("Complaint").  On November 30, 2015, Defendants Alan Arakawa

("A. Arakawa"), Patrick Wong ("Wong"), Keith Regan ("Regan"),

David Goode ("Goode"), Milton Arakawa ("M. Arakawa"),

William Spence ("Spence"), John Minn ("Minn"), and Jeffrey Hunt

("Hunt"), all in their individual capacities (collectively

"Individual Defendants"), filed a Motion for Partial Dismissal of

Claims in Plaintiff's Complaint, Filed on September 18, 2015, and for a More Definite Statement as to Certain Claims ("Motion for Partial Dismissal").[1]  [Dkt. no. 22.]  Plaintiff Christopher Salem ("Plaintiff") filed a memorandum in opposition on December 21, 2015, and the Individual Defendants filed a reply on December 28, 2015.  [Dkt. nos. 40, 44.]

On November 12, 2015, Defendants County of Maui, Mayor Alan Arakawa, Corporation Counsel Patrick Wong, former Director of the Department of Finance Keith Regan, Director of Public Works David Goode, former Director of Public Works Milton Arakawa, Director of the Department of Planning William Spence, former Director of the Department of Planning John Minn, and former Director of the Department of Planning Jeffrey Hunt, all in their official capacities (collectively "County Defendants"), filed an Amended Counterclaim Complaint against Christopher Salem ("Counterclaim").  [Dkt. no. 18.]  On December 3, 2015, Plaintiff filed a Motion to Dismiss Defendants' Amended Counterclaim filed November 12, 2015 Pursuant to FRCP Rule 12(b)(1), (3), (6) ("Motion to Dismiss Counterclaim").  [Dkt. no. 25.]  Plaintiff filed an errata to the Motion to Dismiss Counterclaim on

_____

[1] The Motion for Partial Dismissal states that Minn was "incorrectly identified as 'John Minn'" and that the correct spelling is "Min."  [Motion for Partial Dismissal at 2-3.]  The Court notes that the Individual Defendants have not filed a request to correct the spelling of Minn's name, and therefore the Court will continue to follow the spelling used in the caption.

December 6, 2015 ("Errata").  [Dkt. no. 29.]  On December 21, 2015, the County Defendants filed a memorandum in opposition. [Dkt. no. 41.]  Plaintiff filed a reply on December 28, 2015, and he filed an errata to the reply on December 29, 2015 ("Reply Errata").  [Dkt. nos. 45, 46.]

On February 25, 2016, this Court issued an entering order finding these matters suitable for disposition without a hearing pursuant to Rule 7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules"), and vacating the hearing set for February 29, 2016 at 11:15 a.m.  [Dkt. no 74.]  After careful consideration of the motions, supporting and opposing memoranda, the relevant legal authority, and for the reasons set forth below, the Motion for Partial Dismissal is HEREBY GRANTED IN PART AND DENIED IN PART and the Complaint is HEREBY DISMISSED in its entirety. Further, the Counterclaim is HEREBY DISMISSED, and the Motion to Dismiss Counterclaim is therefore DENIED AS MOOT.

## BACKGROUND

The Complaint is 133 pages and includes 604 numbered paragraphs.  In addition, 131 pages of declarations and exhibits are attached.  The following is what the Court has gathered from its attempts to decipher the Complaint.

"On October 14, 1994, Anka Inc., which owned Lot 48 of the Mailepai Hui Partition along Lower Honoapiilani Road and Hui

Road E" received approval for a three-lot subdivision, which it subdivided into Lot 48A, Lot 48B, and Lot 48C. [Complaint at ¶¶ 92, 97.] Plaintiff purchased Lot 48C in February 1999, and received a Warranty Deed from Anka, Inc. [Id. at ¶¶ 93, 100.] According to the law at the time, Special Management Area ("SMA") permits[2] were not required for subdivisions that had four or fewer parcels ("Three Lots or Less"). [Id. at ¶ 93.] Moreover, the Maui County Code stated that

> "[i]mprovements to existing streets may be deferred for a subdivision containing 3 Lots or Less, provided sub-divider or owner, their heirs, executors for assigns agree to pay their pro rata share of the cost of road improvements [pursuant] to the terms of the ordinance authorizing said improvements by the County or to a formula determined by the County. The land so subdivided shall not thereafter qualify for the exemption with respect to any subsequent subdivision of any of the resulting parcels."

[Id. at ¶ 96 (emphasis omitted) (quoting Maui County Code, § 18.020.040A).[3]]

---

[2] SMA Permits are required pursuant to the Coastal Zone Management Law, Haw. Rev. Stat. Chapter 205A. See Haw. Rev. Stat. § 205A-28 ("No development shall be allowed in any county within the special management area without obtaining a permit in accordance with this part.").

[3] The Court notes that the Maui County Code ("MCC") currently reads:

> A. No improvements shall be required upon existing streets for a consolidation of lots; for a subdivision creating only road widening lots; for a consolidation of three developable lots or less which is resubdivided without creating

(continued...)

4

Plaintiff alleges that the Three Lots or Less program did not provide a formula for calculating the pro rata share that individual landowners would need to pay for road improvements, but it did provide, according to Plaintiff, that the State of Hawai`i Bureau of Conveyances had an "open ended encumbrance in senior position on the title" of all properties that were part of such an agreement. [Id. at ¶ 150 (emphasis omitted).]   It was Plaintiff's understanding that any further development in the subdivision that included Lot 48C would require the developer to pay for infrastructure improvements, and the encumbrance on his title from the Three Lots or Less agreement would be removed. [Id. at ¶ 101.]   In addition, Plaintiff believed any further subdivision of the three lots – Lot 48A, Lot 48B, and Lot 48C – would require an SMA permit, "public hearings, shoreline access parking, park land dedication, environmental assessment, and public review in an open forum."   [Id. at ¶ 102.]

Plaintiff alleges that in 2001, he discovered that Maui County was not keeping records of the Three Lots or Less agreements.   [Id. at ¶ 155.]   Plaintiff asserts that he undertook multiple efforts on multiple fronts to document the Three Lots or

---

[3](...continued)
additional developable lots; or for a subdivided parcel used for a church.  Churches shall dedicate land necessary for road widening purposes to comply with the requirements of this chapter.

MCC § 18.20.040.

Less agreements, and that those efforts were stymied by various members of Maui County government at every step.[4]  Regardless, he was able to obtain over 10,000 pages related to Three Lots or Less agreements, which he catalogued and used to map the location of each agreement.  [Id. at ¶ 228.]  In doing so, Plaintiff discovered that there were many "overlapping one time '3 Lots or Less' subdivision deferral agreements on the same parent parcels of land thru out [sic] Maui County including the Plaintiff's subdivision."[5]  [Id. at ¶ 229.]

In March 2010, Anka, Inc. sold Lot 48A to developer Lot 48A LLC.  [Id. at ¶ 298.]  Lot 48A LLC received an SMA minor permit in June 2000.  [Id. at ¶ 317.]  SMA minor permits were reserved for development projects with a valuation of less than $125,000.  [Id. at ¶¶ 319.]  The permit required certain "conditions, assessments, and roadway construction and drainage mitigations" that Plaintiff alleges Lot 48A LLC has not completed.[6]  [Id. at ¶ 335.]  Plaintiff asserts, therefore, that

---

[4] Plaintiff appears to allege that the Maui County Department of Corporation Counsel ("Corporation Counsel") was responsible for the roadblocks that he encountered.  See Complaint at ¶ 246 ("Since 2001, Corp Counsel has obstructed every public and Maui County Council Member request and demand for complete production of all forms and types of developer deferral and assessment agreement.").

[5] Plaintiff states that Maui County ended the Three Lots or Less program in July 2007.  [Id. at ¶ 173.]

[6] Plaintiff also makes this allegation earlier in the
(continued...)

"Defendant Arakawa,[7] in direct violation of procedures, policies, and provisions adopted by ordinance, incurred an illegal obligation for the County of Maui to pay for upwards to quarter million dollars in a private client Lot 48A, LLC's financial obligations." [Id. at ¶ 354.] Moreover, Plaintiff argues that, because Lot 48A LLC subdivided Lot 48A after a Three Lots or Less agreement had already been used for the land in question, Maui County should have removed the encumbrance from

---

[6](...continued)
Complaint, stating:

> the Order of Magnitude Engineering Estimate falsely qualified the subdivision for an SMA minor permit. Notwithstanding the fact that the evaluations in the engineering estimate were fraudulent; these evaluations, set forth in the estimate, obligated the developer to roadway [sic], engineering, and drainage mitigation improvements along the underlying subdivision frontages of Lower Honoapiilani Road and Hui Road E. The Developer signed the SMA Permit and agreed to make engineering improvements, and environmental mitigations based on those evaluations by their professional consultants and civil engineer. These obligations are, to date, **unfulfilled** and were **concealed** from Salem by both the County of Maui Department of Planning, the Developer, and their conflicted legal counsel Margery Bronster while employed by the Department of Corporation Counsel.

[Id. at ¶ 54 (emphasis in Complaint).] Plaintiff alleges that Bronster & Hoshibata was hired by Maui County to deal with legal issues related to water and wastewater treatment on Moloka`i, and that her firm also represented Lot 48A LLC which created a conflict of interest. [Id. at ¶¶ 282, 289.]

[7] Plaintiff does not specify whether he is referring to M. Arakawa or A. Arakawa.

his property.  [Id. at ¶ 356.]

In May 2010, Maui County sent a "'Notice of Intent to Collect' to property owners along Phase IV of Lower Honoapiilani Road for their pro rata share of monies" owed ("May 2010 Notice"), informing them of their responsibility to pay for roadway improvements pursuant to relevant Three Lots or Less agreements.  [Id. at ¶ 253.]  Plaintiff tried to sell Lot 48C in January 2011, and he states that, upon entering escrow, he had a legal obligation to inform the title company of the May 2010 Notice. [Id. at ¶ 260.]  The title company sent Corporation Counsel a request for the amount of the encumbrance on Lot 48C, but the Corporation Counsel did not respond.  As a result, the property was unappraisable, and many realtors would therefore not work with Plaintiff.  [Id. at ¶¶ 260-68.]  Thereafter, during a judicial foreclosure of the Property, Plaintiff's tenant at Lot 48C agreed to buy the home.  Another title company asked Maui County for the amount owed for the Three Lots or Less encumbrance, and they were told that no money was owed, but that an amount may be assessed in the future.  [Id. at ¶¶ 269-75.]

Plaintiff's family home and Lot 48C were sold in a judicial foreclosure on January 20, 2015.  [Id. at ¶ 390.] Plaintiff makes a number of statements in the Complaint that seek to link the events described to the foreclosure of his two properties.  See, e.g., id. at ¶ 57 ("Plaintiff Salem's family

home has now been lost to foreclosure due to the unlawful acts by the Defendant's named herein."); id. at ¶ 391 ("Plaintiff Salem has exhausted his life savings on legal fees spent to protect his property and his interests, as a direct and proximate result of an unfulfilled, open, and unenforced Lot 48A, LLC SMA Permit."). Moreover, Plaintiff alleges that an attorney for Lot 48A LLC secretly drafted and recorded "private warranty deeds" that altered the Three Lots or Less agreement on the property to make it appear as if the agreement included five lots. [Id. at ¶ 78-79.] This allegedly led to a "fraudulent settlement agreement" and a $270,000 lien against his property for legal fees.[8] [Id. at ¶¶ 78, 81.] The gravamen of the Complaint appears to be that the mismanagement of the Three Lots or Less program resulted in the foreclosure of Lot 48A and Plaintiff's family home.

Plaintiff brings the following claims:  breach of fiduciary duty ("Count I"); [id. at ¶¶ 412-16;] substantive and

---

[8] In addition, Plaintiff states that

> [b]ut for the legal disputes over Lot 48A, LLC's breaches of a settlement agreement that was itself fraudulent and evidenced collusion and conspiracy between Public Works Director Milton Arakawa, developer Lot 48A, LLC, and their legal counsel Tom Welch; Christopher Salem's [sic] would not have endured years of grief and hundreds of thousands of dollars in legal fees and expenses.

[Id. at ¶ 72 (emphasis omitted).]  The settlement and legal fees discussed appear to relate to a separate case filed by Plaintiff.

procedural *ultra vires* ("Count II"); [<u>id.</u> at ¶ 417-26;]
violations of Haw. Rev. Stat. Chapter 205A ("Count III"); [<u>id.</u> at
¶¶ 427-32;] violations of Haw. Rev. Stat. Chapter 343 ("Count
IV"); [<u>id.</u> at ¶¶ 433-35;] negligent hiring and negligent
retention ("Count V"); [<u>id.</u> at ¶¶ 436-43;] negligent supervision
("Count VI"); [<u>id.</u> at ¶¶ 444-45;] violations of bankruptcy law,
specifically 18 U.S.C. §§ 152, 157, and 1519 ("Count VII"); [<u>id.</u>
at ¶¶ 446-53;] "civil conspiracy and 42 U.S.C. 1983, 1985 and
14th Amendment Civil Rights Violations" ("Count VIII"); [<u>id.</u> at
pg. 101 (emphasis omitted); <u>id.</u> at ¶¶ 454-73;] honest service
fraud, in violation of 18 U.S.C. §§ 1341 and 1346 ("Count IX");[9]
[<u>id.</u> at ¶¶ 474-82;] "breach of duty by public officers/breach of
the public trust and offenses against public administration"
("Count X"); [<u>id.</u> at pg. 107 (emphasis omitted); <u>id.</u> at ¶¶ 483-
501;] perjury and obstruction of justice ("Count XI"); [<u>id.</u> at
¶¶ 502-12;] conflicts of interest and unjust enrichment, in
violation of the Hawai`i Rules of Professional Conduct and the
Maui County Charter ("Count XII"); [<u>id.</u> at ¶¶ 513-26;] gross
negligence ("Count XIII"); [<u>id.</u> at ¶¶ 527-47;] breach of the
covenant of good faith and fair dealing ("Count XIV"); [<u>id.</u> at

---

[9] In the heading for Count IX, Plaintiff states that the
claim is for violation of 18 U.S.C. §§ 1341 and 1326.  <u>See</u> <u>id.</u> at
pg. 105.  The Court notes, however, that § 1326 is not a section
within Title 18 of the United States Code, and in expounding on
Count IX, Plaintiff references 18 U.S.C. § 1346.  <u>See</u> <u>id.</u> at
¶ 475.

¶¶ 548-52;] fraud ("Count XV"); [id. at ¶¶ 553-66;] unfair and

deceptive trade practices ("Count XVI"); [id. at ¶¶ 567-71;]

false light ("Count XVII"); [id. at ¶¶ 572-78;] intentional

infliction of emotional distress ("IIED" and "Count XVIII"); [id.

at ¶¶ 579-91;] negligent infliction of emotional distress ("NIED"

and "Count XVIIII"[10]); [id. at ¶¶ 592-94;] trespass to chattel

("Count XX"); [id. at ¶¶ 595-99;] and constructive taking ("Count

XII") [id. at ¶¶ 600-04].  Plaintiff's Prayer for Relief consists

of twenty-eight various requests for injunctive, declaratory, and

other forms of relief.  [Prayer for Relief i-xxviii.]

　　　　The Counterclaim alleges abuse of process

("Counterclaim I"), [Counterclaim at ¶¶ 77-83,] and malicious

prosecution ("Counterclaim II") [id. at ¶¶ 84-88].  The County

Defendants seek consequential damages – including "expenses,

defense fees, and costs" – punitive damages, attorneys' fees and

costs in assumpsit for Plaintiff's contract claims, and any

further relief the Court believes is "just and appropriate."

[Id., Prayer for Relief at ¶¶ A-E.]

**DISCUSSION**

I.　　**The Motion for Partial Dismissal**

　　　　Fed. R. Civ. P. 8 states, in pertinent part,

---

[10] This is the roman numeral that Plaintiff uses in the
Complaint, and, for the sake of consistency, the Court will do
the same.

**(a) Claim for Relief.** A pleading that states a claim for relief must contain:

> (1) a short and plaint statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plan statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

. . . .

**(d) Pleading to be Concise and Direct; Alternative Statements; Inconsistency.**

> **(1) *In General.*** Each allegation must be simple, concise, and direct. No technical form is required.

This Court has stated that

> [t]his "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Lagmay v. Nobriga, CIV. NO. 15-00463 LEK/BMK, 2016 WL 164296, at *2 (D. Hawai`i Jan. 12, 2016). The Complaint in the instant matter does not comply with Rule 8 and is an impermissible "shotgun pleading." See, e.g., Sollberger v. Wachovia Sec., LLC, No. SACV 09-0766 AG (ANx), 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) ("Related to plausibility and particularity is the concept of shotgun pleading. Shotgun pleadings are pleadings

12

that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations.  They are unacceptable.").[11]  Plaintiff explains what he believes are the wrongful actions of Maui County officials and their associates, and then tries to connect these actions to legal fees from a separate case, a lien on his property, and a subsequent

---

[11] The Complaint represents that, "[w]henever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally." [Id. at ¶ 22.]  In addition, every claim incorporates each and every preceding paragraph. See, e.g., id. at ¶ 412 ("Plaintiff incorporates by reference paragraphs 1-411 of Plaintiff's Complaint as if fully set forth herein."); id. at ¶ 600 ("Plaintiff Salem incorporates paragraphs 1-599 of Plaintiff Salem's Complaint as if fully set forth herein.").  This type of pleading has been repeatedly rejected by courts within the Eleventh Circuit:

> The allegations which comprise the First Amendment retaliation claim typify shotgun pleading which has been condemned by the Eleventh Circuit.  Plaintiff recites the facts in one section of the complaint and then in Count Three merely incorporates the facts by reference to all the preceding facts, without identifying which facts are relevant to the First Amendment retaliation claim.  Plaintiff also generically pleads that "Defendants," in the plural form, deprived him of his First Amendment rights, without enumerating the precise acts of each Defendant which resulted in the alleged constitutional violation.

Hayden v. Ala. Dep't of Pub. Safety, 506 F. Supp. 2d 944, 952 (M.D. Ala. 2007) (footnote and some citations omitted) (citing Sikes v. Teleline, Inc., 281 F.3d 1350, 1355 n.9 (11th Cir. 2002), *abrogated on other grounds by* Bridge v. Phoenix Bond & Indem. Co., 533 U.S. 639 (2008)).

13

foreclosure.  <u>See, e.g.</u>, Complaint at ¶¶ 72, 78, 81.  Plaintiff

does not explain the legal fees or the foreclosure, nor does he

establish a causal nexus between the alleged mismanagement by

Maui County of the Three Lots or Less program and the harm that

he allegedly suffered.  Moreover, the 133-page Complaint, with

its 604 numbered paragraphs and 131 pages of declarations and

exhibits, is meandering, repetitive, confusing, and, at times,

incomprehensible.  It consists of a seemingly endless series of

statements that Plaintiff insists trace the relevant history of

the instant suit.  After reading the Complaint multiple times,

however, the Court is still unsure of:  (1) what many of the

claims are; and (2) the grounds upon which many of the claims are

based.

> The court may . . . dismiss a complaint for
> failure to comply with Federal Rule of Civil
> Procedure 8.  <u>See</u> <u>Hearns v. San Bernardino Police
> Dep't</u>, 530 F.3d 1124, 1131 (9th Cir. 2008).  Rule
> 8 requires that a complaint include "a short plain
> statement of the claim" and that each allegation
> "be simple, concise, and direct."  Fed. R. Civ. P.
> 8(a)(2), (d)(1).  A complaint that is so confusing
> that its "'true substance, if any, is well
> disguised'" may be dismissed *sua sponte* for
> failure to satisfy Rule 8.  <u>Hearns</u>, 530 F.3d at
> 1131 (quoting <u>Gillibeau v. City of Richmond</u>, 417
> F.2d 426, 431 (9th Cir. 1969)).

<u>Cataluna v. Vanderford</u>, Civ. No. 14-00480 LEK-RLP, 2014 WL

6490466, at *3 (D. Hawai`i Nov. 18, 2014); <u>see also</u> <u>McAllister v.

Hawaiiana Mgmt. Co.</u>, CV. No. 11-00056 DAE-KSC, 2011 WL 3704986,

at *3 (D. Hawai`i Aug. 24, 2011) ("Put slightly differently, a

district court may dismiss a complaint for failure to comply with Rule 8 where it fails to provide the defendants fair notice of the wrongs they have allegedly committed." (some citations omitted) (citing McHenry v. Renne, 84 F.3d 1172, 1178-80 (9th Cir. 1996))).  Moreover, "[w]hile 'the proper length and level of clarity for a pleading cannot be defined with any great precision,' Rule 8(a) has 'been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling.'"  Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1059 (9th Cir. 2011) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1217 (3d ed. 2010)).

Plaintiff argues that "pleading requirements should not be misused to allow an alleged wrongdoer benefit from wrongdoing." [Mem. in Opp. to Motion for Partial Dismissal at 6.]  The Court agrees with Plaintiff's argument in theory, but it does not apply here.  The Court FINDS that the Complaint does not comply with Rule 8, and it therefore must be dismissed.

Even assuming, *arguendo*, that the Complaint complied with Rule 8, the Court would still have to dismiss Counts VII, IX, and XI.  Count VII alleges violations of 18 U.S.C. §§ 152, 157, and 1519; Count IX alleges honest services fraud in violation of 18 U.S.C. §§ 1341 and 1346; and Count XI alleges perjury and obstruction of justice in violation of Haw. Rev.

15

Stat. § 710-1063.   It is well-established that "Plaintiffs, as
private citizens, lack standing to bring claims under criminal
statutes."  See, e.g., Horowitz v. Sulla, Civil No. 13-00500 HG-
BMK, 2014 WL 1048798, at *6 (D. Hawai`i Mar. 14, 2014) (some
citations omitted) (citing Linda R.S. v. Richard D., 410 U.S.
614, 619 (1973)); see also In re Lilly, Bankruptcy No. 12-00245-
TLM, 2012 WL 6589699, at *4 (Bankr. D. Idaho Dec. 18, 2012)
("Federal criminal statutes are prosecuted by the [United States]
Attorney, not by civil litigants, and there is no private right
of action under the suggested provisions of Title 18.   Plaintiff
lacks standing to assert these claims.").   Although Plaintiff
argues, inter alia, that:  "he is asserting there is an implied
private right of action"; "[t]he clear legislative intent of the
law regarding Honest Services Fraud is that citizens are allowed
to rely on the basic premise that honest services by government
is a right that they have and should be able to depend upon"; and
that "[c]ertainly Salem must have standing in the Federal Court
to enforce a Federal Law which he alleges has been violated and
from which he alleges such violation is a direct and, or
proximate cause of his harm," [Mem. in Opp. to Motion for Partial
Dismissal at 6-7,] his arguments are unavailing.   Plaintiff
provides no case law that supports his claims, and the Court does

not know of any.[12]  The Court FINDS that, insofar as Counts VII,
IX, and XI allege violations of criminal statutes and assert a
private right of action under those statutes, these claims cannot
be cured by amendment.[13]

---

[12] Plaintiff cites two cases for the general proposition
that certain statutes have an implied private right of action.
See Mem. in Opp. to Motion for Partial Dismissal at 6.  In Cort
v. Ash, the United States Supreme Court laid out the test for
determining "whether a private remedy is implicit in a statute
not expressly providing one," and held that "implication of such
a federal cause of action is not suggested by the legislative
context of [18 U.S.C.] § 610 or required to accomplish Congress'
purposes in enacting the statute."  422 U.S. 66, 68-69, 78
(1975).  In Cannon v. University of Chicago, the Supreme Court
used the test they developed in Cort to determine that there is a
private right of action under Title IX of the Education
Amendments of 1972.  441 U.S. 677, 680 (1979).  "In later cases,
the Supreme Court essentially collapsed the Cort test into a
single focus:  '[t]he central inquiry remains whether Congress
intended to create, either expressly or by implication, a private
cause of action.'"  Logan v. U.S. Bank Nat'l Ass'n, 722 F.3d
1163, 1169 (9th Cir. 2013) (alterations in Logan) (some citations
omitted) (quoting Touche Ross & Co. v. Redington, 422 U.S. 560,
575, 99 S. Ct. 2479 (1979)).  Here, the Court need not engage in
this type of inquiry, as the Plaintiff provides no authority to
challenge the general rule that individuals do not have standing
to enforce criminal law.  See Tia v. Criminal Investigation
Demanded as Set Forth, 441 F. App'x 457, 458 (9th Cir. 2011)
("The district court properly denied [plaintiff's] request for a
criminal investigation . . . because [plaintiff] lacks standing
to compel an investigation or prosecution of another person."
(citing Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S. Ct.
1146, 35 L. Ed. 2d 536 (1973))).

[13] Insofar as Plaintiff brings Counts XI and XII, as well as
any other claim in the Complaint, based upon the Hawai`i Rules of
Professional Conduct, the Court notes that the rules state, in
pertinent part:

> Violation of a Rule should not itself give rise to
> a cause of action against a lawyer nor should it
> create any presumption in such a case that a legal
> (continued...)

The Complaint is HEREBY DISMISSED in its entirety.[14]

Further, Counts VII, IX, and XI are DISMISSED WITH PREJUDICE.

See, e.g., Song v. KBOS, Inc., Civ. No. 15-00094 ACK-RLP, 2015 WL 5162556, at *2 (D. Hawai`i Aug. 31, 2015) ("Leave to amend 'is properly denied, however, if amendment would be futile.'" (citing Carrico v. City & County of S.F., 656 F.3d 1002, 1008 (9th Cir.

---

[13](...continued)
duty has been breached.  In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation.  The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies.  They are not designed to be a basis for civil liability.  Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.  The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule.  Nevertheless, since the Rules do establish standards of conduct by lawyers, a lawyer's violation of a rule may be evidence of breach of the applicable standard of conduct.

Haw. R. Prof'l Conduct, Scope at ¶ 7.  The Court will not dismiss these claims with prejudice at this juncture, as the Court cannot entirely make out Plaintiff's arguments.  The Court, however, encourages Plaintiff to consider whether these claims are cognizable under the Hawai`i Rules of Professional Conduct.

[14] The Court notes that the Motion for Partial Dismissal only sought dismissal of the claims brought against the Individual Defendants.  See Motion for Partial Dismissal at 30. The Court's analysis, however, applies to the Complaint in its entirety, including the claims brought against the County Defendants.

2011))).

## II. **Motion to Dismiss Counterclaim**

Both Counterclaims I and II are state law claims that relate to the Complaint. See Counterclaim at ¶ 82 ("to the extent that Plaintiff Christopher Salem is engaging in duplicative litigation facts, circumstances, and claims, discovery, and seeking damages based on contentions and disputes which have been already been [sic] disposed of, and/or which have already been shown to not have any reasonable factual or evidentiary support, Plaintiff is engaged in an abuse of process"); id. at ¶ 88 ("The filing of this lawsuit and the repetitive discovery in which Christopher Salem is engaged is unjustified, and will cause the county unnecessary damages, including fees and costs in an amount to be determined." (emphasis omitted)).  Because the Complaint has been dismissed, there is no federal claim at issue.  The Court therefore DISMISSES the Amended Counterclaim WITHOUT PREJUDICE and DENIES AS MOOT the Motion to Dismiss Counterclaim.[15]   See, e.g., Lanier

---

[15] While the Court has dismissed the counterclaims without prejudice, the Court encourages the County Defendants to consider whether or not the counterclaims are ripe before re-filing them, if they plan to do so.  In addition, the Court notes that, on September 29, 2015, the County Defendants filed a Motion to Dismiss and/or for Partial Summary Judgment to dismiss the claims against Defendants Department of the Corporation Counsel, Department of Public Works, Department of Planning, and Department of Finance ("County Departments") with prejudice. [Dkt. no. 5.]  On December 30, 2015, the Court granted the
(continued...)

v. Ass'n of Apartment Owners of Villas of Kamali`i, CV No. 06-
00558, 2007 WL 842069, at *8 (D. Hawai`i Mar. 16, 2007)
("Counterclaim Plaintiff's causes of action are purely state law
claims.  As Plaintiff's complaint has been dismissed, there is no
federal claim at issue.  Accordingly, this Court denies without
prejudice Counterclaim Plaintiff's motion for summary judgment
and dismisses without prejudice the counterclaims." (emphases and
some citations omitted) (citing United Mine Workers of Am. v.
Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)
("if the federal claims are dismissed before trial, even though
not insubstantial in a jurisdictional sense, the state claims
should be dismissed as well."))).

## CONCLUSION

On the basis of the foregoing, the Individual
Defendant's Motion for Partial Dismissal of Claims in Plaintiff's
Complaint, Filed on September 18, 2015, and for a More Definite
Statement as to Certain Claims, filed November 30, 2015, is
HEREBY GRANTED IN PART AND DENIED IN PART.  It is GRANTED insofar
as:  the Complaint is DISMISSED in its entirety; and Counts VII,
IX, and XI are DISMISSED WITH PREJUDICE.  It is DENIED insofar
as:  all of the remaining counts are DISMISSED WITHOUT PREJUDICE;

---

[15](...continued)
motion.  [Dkt. no. 47.]  The County Defendants did not, however,
file a dispositive motion that addresses the remaining parties,
and the Court urges the County Defendants to engage in a more
informed and strategic use of dispositive motions.

and the Individual Defendant's request for a more definite statement is DENIED AS MOOT.  In addition, the Court HEREBY DISMISSES WITHOUT PREJUDICE the County Defendant's Amended Counterclaim and therefore DISMISSES AS MOOT Plaintiff's Motion to Dismiss Defendants' Amended Counterclaim filed November 12, 2015 Pursuant to FRCP Rule 12(b)(1), (3), (6), filed on December 3, 2015.

The Court has dismissed all but Counts VII, IX, and XI without prejudice, and Plaintiff may therefore file a motion to amend the Complaint, if he so desires.  The Court notes that Plaintiff has such a motion currently pending before the magistrate judge.  Specifically, Plaintiff's Motion for Leave to File a First Amended Complaint, filed on March 8, 2016.  [Dkt. no. 77.]

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 15, 2016.



　　/s/ Leslie E. Kobayashi　
Leslie E. Kobayashi
United States District Judge

__CHRISTOPHER SALEM VS. ALAN ARAKAWA, ETC., ET AL__; CIVIL 15-00384 LEK-KSC; ORDER: (1) GRANTING IN PART AND DENYING IN PART INDIVIDUAL DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF CLAIMS IN PLAINTIFF'S COMPLAINT, FILED ON SEPTEMBER 18, 2015, AND FOR A MORE DEFINITE STATEMENT AS TO CERTAIN CLAIMS; AND (2) DENYING AS MOOT PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' AMENDED COUNTERCLAIM FILED NOVEMBER 12TH, 2015 PURSUANT TO FRCP RULE 12(B)(1), (3), (6)